**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| COMPETITIVE ENTERPRISE INSTITUTE | ) | |
| 1899 L Street, N.W., 12th Floor | ) | |
| Washington, D.C. 20036 | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-215 |
| | ) | |
| | ) | |
| UNITED STATES ENVIRONMENTAL | ) | |
| PROTECTION AGENCY | ) | |
| 1200 Pennsylvania Avenue, N.W. | ) | |
| Washington, D.C. 20460 | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Competitive Enterprise Institute ("CEI") for its complaint against Defendant United

States ENVIRONMENTAL PROTECTION AGENCY ("EPA" or "the Agency"), alleges as

follows:

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to

compel production of certain agency email messages discussing a senior official's text

messaging and related recordkeeping practices pursuant to a May 13, 2014 request.

2.      Text messaging is an alternative to email that EPA provides to certain employees, which

unlike email affords employees the ability to correspond in "real-time."[1]

---

[1] *See e.g.*, Web Collaboration Tools WWG 2010. "A presentation and discussion of what tools
staff use to collaborate with external partners."  Power Point presentation,
http://semanticcommunity.info/@api/deki/files/993/Web_Collaboration_Tools_WWG_Oct_06.pp
t. Page 21 addresses instant messaging and other alternative to email, "Ability: Exchange text
based messages in real-time." Pages 3, 18, 19, 23, 25, 32 also address the use of such real-time
messaging for EPA employees in performing their duties.

3.     EPA acknowledged to plaintiff in another matter previously before this Court that it has

destroyed all copies of text message correspondence sent to or from current Administrator

Gina McCarthy's EPA-assigned account when Ms. McCarthy was Assistant Administrator

for Air and Radiation.  EPA explained that this was because all 5,932 text messages on

Ms. McCarthy's EPA phone identified in response to that request were "personal."[2]

4.     Plaintiff was able to obtain EPA telephony metadata records for seven months, in response

to a different FOIA request.  These showed Ms. McCarthy corresponding, by her EPA-

provided text message account, with eleven EPA co-workers' EPA-provided accounts,

including those of Ms. McCarthy's senior policy aides.

5.     On the basis of this and other information available to plaintiff, plaintiff requested the

correspondence at issue in the present case.  Records responsive to this May 2014 request

at issue in this case appear to represent Ms. McCarthy explaining her texting practices to

various EPA employees, when asked to provide text messages in response to one of

plaintiff's FOIA requests.  These records also include (often redacted) discussion among

various EPA information technology professionals about retrieving copies of Ms.

McCarthy's text messages.  This information is of great public interest.

---

[2] *See, e.g., Answer* in *Competitive Enterprise Institute v. Environmental Protection Agency*, D.D.C. No. 13-779 (BAH)(filed 7/19/2013) at ¶ 8 (conceding that such texts were sent/received by then-Assistant Administrator Gina McCarthy), ¶21 (conceding that EPA provides such officials "with personal digital assistants that have text messaging capability"), ¶¶14, 33 (EPA currently unable to locate such records); email from Michelle Lo, counsel for EPA, to Chris Horner and Hans Bader, counsel for CEI, at 9/9/2013 3:46 PM (admitting "Ms. McCarthy uses text messaging," but arguing that "they were not [sic] required to be preserved by the Agency."); Email from Lo to Horner & Bader, at 8/1/2013 7:25 PM (conceding "Ms. McCarthy used the texting function on her EPA phone" and "none of her texts over the period encompassing the 18 specific dates at issue in CEI's FOIA request (July 9, 2009, to June 29, 2012) were preserved").

6.    EPA is withholding hundreds of emails responsive to this request in full, and hundreds of others in part, according to redacted emails and an index it has provided plaintiff.  This list of emails withheld in full also withholds the identities of all parties to each email except the sender.

7.    As such, EPA withholds basic factual information that clearly is reasonably segregable and can obviously be produced without revealing privileged information or agency deliberations.  By withholding such basic factual information, the Agency inherently did not establish that they are intra-agency communications covered by Exemption 5, regardless of how deliberative, pre-decisional or attorney-client privileged they may be.

8.    On their face these records are directly and materially relevant to ongoing litigation in this Court, *CEI v. EPA*, 1:13-cv-01532 (RMC), involving another of plaintiff's EPA FOIA requests (HQ-2013-006005).  That suit seeks to compel EPA to report to the National Archivist the above-described loss of every one of thousands of Ms. McCarthy's correspondence, which reporting triggers remedial steps, and seeks to stop EPA's practice of widespread destruction of this entire class of records or correspondence.

9.    As that litigation proceeded through motions practice EPA repeatedly delayed providing the required response to the request at issue in this matter; as part of these delays EPA serially asserted that it expected to complete its productions the following week, only to then assert the same thing each time plaintiff inquired, putting the day off yet again.

10.   Now that EPA has at last provided its final response to the instant request, and failed to respond to plaintiff's administrative appeal of same in the required time, plaintiff may seek judicial relief for EPA improperly withholding responsive records in full, and other non-exempt information contained in responsive records EPA has partly released.

## PARTIES

11.   Plaintiff CEI is a public policy research and educational institute in Washington, D.C.,

dedicated to advancing responsible regulation and in particular economically sustainable

environmental policy. CEI's programs include research, investigative journalism and

publication, as well as a transparency initiative seeking public records relating to

environmental policy and how policymakers use public resources.

12.   Defendant EPA is a federal agency headquartered in Washington, D.C. whose stated

mission is to "protect human health and the environment."

## JURISDICTION AND VENUE

13.   This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B), because this action is

brought in the District of Columbia, and 28 U.S.C. § 1331, because the resolution of

disputes under FOIA presents a federal question.

14.   Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because Plaintiff

resides in the District of Columbia, and defendant EPA is a federal agency.

## FACTUAL BACKGROUND

15.   Transparency in government is the subject of high-profile promises from the president and

attorney general of the United States arguing forcefully against agencies failing to live up

to their legal recordkeeping and disclosure obligations. As the President emphasized, "a

democracy requires accountability, and accountability requires transparency," and "the

Freedom of Information Act . . . is the most prominent expression of a profound national

commitment to ensuring open Government." *Presidential Memorandum For Heads of Ex-

ecutive Departments and Agencies*, 75 F.R. § 4683, 4683 (Jan. 21, 2009). Accordingly, the

President has directed that FOIA "be administered with a clear presumption: In the face of

doubt, openness prevails" and that a "presumption of disclosure should be applied to all

4

decisions involving FOIA.'" U.S. Department of Justice, Office of Information Policy,
*President Obama's FOIA Memorandum and Attorney General Holder's FOIA Guidelines,
Creating a "New Era of Open Government."*

16.   Plaintiff's prior dealings with EPA, however, demonstrate that senior EPA officials have a

practice of using official equipment and accounts for corresponding via text messaging as

an alternative to email, while destroying the employee's copy of the correspondence. (See

discussion and FN 2, *supra*).  That violates and evades federal record-keeping laws and

regulations (*e.g.*, Federal Records Act of 1950 44 U.S.C. 3101 *et seq*., and the E-

Government Act of 2002; 36 C.F.R. Subchapter B, Records Management, and all

applicable National Archives and Records Administration (NARA) mandated guidance).

That practice is also a reason why plaintiff asserts on information and belief, after making

numerous inquiries, that no text correspondence has been produced by agencies in

response to FOIA requests, congressional oversight or litigation discovery requests for,

e.g., "all records", "all correspondence" or "all electronic records" on a particular

issue(s).[3]  To plaintiff's knowledge, the sole text messages produced in response to such

---

[3] In its most recent filing in *CEI v. EPA*, 1:13-cv-01532 (RMC), EPA ignores the the likely
reason for its employees' interest in using this real-time communication means, provided to them
for work- purpose communication as an alternative method to email.  Instead, it disingenuously
claims that the Agency has no evidence any employees ever texted on work-related matters, and
that employees instead limit work-related correspondence to email (*see Memorandum In Support
of Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction*, Exhibit 1, ECF No.
25-2 at pg. 3, in *CEI v. EPA*, D.D.C. No. 13-1532), even though plaintiff had provided EPA with
exemplars of EPA employees asserting their use of texting and other instant-messaging for work-
related correspondence (*see* the Amended Complaint and Answer in that case, ECF Nos. 18 &
22, at ¶¶ 27-28, 30-31)), and the judge in that case had observed that "it is implausible that EPA
administrators would not have suspected the destruction of *any* federal records with the removal
of over 5,000 Agency text messages." *Competitive Enterprise Institute v. E.P.A.*, 2014 WL
4359191, * 8 (D.D.C. Sept. 4, 2014).

requests have been produced by private parties turning over their copies in response to legislative oversight inquiry.[4]

17.    This problem is related in character to that of senior Agency employees turning to non-official email accounts for select correspondence, "not capturing those emails in the [official] records system" which evinces a violation of the Federal Records Act.[5]  Further, in practice this means those accounts are not searched in response to FOIA requests (s*ee Landmark Legal Foundation v. E.P.A.*, 2013 WL 4083285, *6 (D.D.C. Aug. 14, 2013)), and the employee's copy of the correspondence is destroyed.[6]

18.    FOIA has the broadest definition of "record" among the relevant federal statutes.  "The definition of a record under the Freedom of Information Act (FOIA) is broader than the

---

[4] *See e.g.*, "Questionable Acquisitions: Problematic IT Contracting at the IRS, Staff Report, Committee on Oversight and Government Reform, U.S. House of Representatives, 113TH Congress, June 25, 2013, page citing to text messages between IRS Deputy Director for IT Acquisition Greg Roseman and Braulio Castillo, "Castillo and Roseman exchanged 34 phone calls and 33 text messages. (Section IX(E)(4)-(5), p. 118). Text messages produced to the Committee show that Castillo and Roseman had a long-term friendship that extended well beyond a professional relationship." Citation to AT&T Phone Records omitted. http://oversight.house.gov/wp-content/uploads/2013/06/Strong-Castle-IRS-Final-Report.pdf, page 6; *see also e.g.*, Kate Zernike, "Christie Faces Scandal on Traffic Jam Aides Ordered", New York Times, January 8, 2014 http://www.nytimes.com/2014/01/09/nyregion/christie-aide-tied-to-bridge-lane-closings.html?_r=0.

[5] Progress and Remaining Challenges Regarding Impediments to Access Faced by Office of Inspector General for EPA and CSB, Statement of Arthur A. Elkins Jr. Inspector General Before the Committee on Oversight and Government Reform U.S. House of Representatives, February 3, 2015, http://oversight.house.gov/wp-content/uploads/2015/02/EPA_IG_Written_Statement_for_HOGR_Hearing_of-02-03-15.pdf, page 2.

[6] *See, e.g.*, EPA's response to FOIA request no. EPA-R9-2013-007631, in which the sole copies of much of the produced correspondence responsive to plaintiff's request for work-related emails on EPA Region 9 administrator's Comcast email account was only produced by a subsequent search of his colleagues' EPA accounts, indicating that the employee had deleted his copies of much of this work-related correspondence.

definition under the Federal Records Act." See, e.g., EPA, What Is a Federal Record?, www.epa.gov/records/tools/toolkits/procedures/part2.htm.

19.   All such text-message correspondence on accounts assigned for EPA-related use are potentially "agency records" under the Federal Records Act (44 U.S.C. § 3301), and even more likely are covered by FOIA.[7]

20.   EPA has acknowledged this yet asserted that, of the several thousand text messages identifiable as sent by or to senior EPA official Gina McCarthy, none were work-related, including those between Ms. McCarthy and other EPA-assigned phone numbers.  EPA made this claim in explaining why it allowed Ms. McCarthy to destroy each message. (See footnote 3, *supra*).

21.   In light of this background and that described in paragraphs 3-5, *supra*, plaintiff sought the email records at issue here, to obtain public information about correspondence possibly shedding light on EPA's work including with pressure groups,[8] but which correspondence EPA has not been searching or producing in response to public and legislative inquiries.

22.   After numerous delays EPA asserted in its initial determination its intention to withhold hundreds of emails in full and hundreds of others in part or all substantive portions.

---

[7] Indeed text messages on EPA accounts are presumptively federal records. See e.g., http://www.archives.gov/records-mgmt/initiatives/im-faq.html, http://www.epa.gov/records/faqs/email.htm, and Memo to All Staff, "Transparency at EPA" by then-Acting Administrator Bob Perciasepe dated April 8, 2013.

[8] Plaintiff cites to a January 28, 2013 email from Sierra Club's John Coequyt to EPA policy counsel Joe Goffman stating, in full, "Switching to email. Can a few of us come talk to you and Gina about so2 naaqs [sic]. Happy to discuss on phone before too.", as suggesting that EPA officials did indeed use texting in this way.

23. Plaintiff challenges certain of these withholdings on the basis that EPA cites privileges which it does not provide sufficient information to support, and which available evidence indicates are inapplicable.

**<u>Administrative History</u>**

24. Plaintiff submitted a FOIA request to EPA on May 13, 2014.

25. Plaintiff's FOIA request sought (emphases in original):

> copies of all email or text messages sent to or from anyone in EPA Headquarters Office of General Counsel that both 1) **is either to or from Gina McCarthy or cites or refers to Gina McCarthy, and 2) cites, mentions, or refers to the words text messaging or text messages (which also includes reference to such terms as, e.g., "texts", "texting", "SMS").** That is, all OGC emails and/or texts that are from, to, cite or refer to Ms. McCarthy, and reference texting as described.

26. EPA assigned this request identification number HQ-FOI-2014-006434.

27. On June 12, 2014, EPA took an extra seven weeks to respond, until July 31, 2014.  On July 30, 2014, EPA mailed its first partial production.  In that production letter, and in an August 6, 2014 follow up letter correcting some information, EPA noted that it had yet to process approximately 400 documents, which it expected to produce by August 29, 2014.  On August 29, 2014, EPA mailed its second production of approximately 74 documents including numerous duplicates of publicly available records, asserting that it expected to conclude its production of the remaining pages before September 19, 2014.  This did not occur but on September 29, 2014, EPA mailed its third production of approximately 101 documents, indicating it expected to complete processing and production of the remaining responsive records two weeks later on October 9, 2014.  This did not occur but over each of the next several weeks EPA indicated its expectation that the final production of these few remaining pages would come that or the next week, each such date passing with EPA

8

offering a different rationale each time, offering a new expected date that then passed without the production.

28.   EPA did finally provide plaintiff with the Agency's initial determination, withholding hundreds of emails in full and hundreds of others in part, or full substantive part, on the grounds that the information is exempt from disclosure as deliberative, attorney-client, attorney work product or some combination of those under 5 U.S.C. § 552(b)(5). (EPA does not specify the number of records withheld in full but asserted it is some number less than 450 and that the index likely includes some duplicates. EPA Final Response Letter, page 1, December 9, 2014).  EPA also withheld some information on the basis that it is "(b)(6)" personal information.  Plaintiff does not challenge these withholdings.

29.   In this final response EPA instructed plaintiff, "You may appeal this response to the National Freedom of Information Officer, U.S. EPA, FOIA and Privacy Branch, 1200 Pennsylvania Avenue, N.W. (2822T), Washington, DC 20460 (U.S. Postal Service only), FAX: (202) 566-2147, E-mail hq.foia@epa.gov."

30.   On January 8, 2015, plaintiff challenging certain among these withholdings by administrative appeal, sent by electronic mail to U.S. EPA, FOIA and Privacy Branch, to hq.foia@epa.gov, Subject: "Appeal under the Freedom of Information Act -- Request 14-6434."

31.   EPA's has not responded to plaintiff's administrative appeal, which was due on or before February 6, 2015.  5 U.S.C. § 552 (a)(6)(A)(ii).

32.   These records are of great public interest and importance, are directly relevant to another action proceeding before this Court, and EPA's actions delaying their release violates its obligations under FOIA.

**PLAINTIFF'S CHALLENGES TO CERTAIN EPA WITHHOLDINGS**

**EPA Improperly Withholds "Text Response" Discussions**

33.   EPA withholds all but one email thread with the Subject: "Text response", as deliberative and attorney-client privileged, while also withholding the parties to the correspondence of all but one of these ten emails (or eleven, see FN 11, *infra*). Plaintiff discusses these withholdings in paragraphs 34 - 47, *infra*.

**A)   EPA Improperly Withholds Correspondence as Attorney-Client Privileged**

34.   That one released "Text response" email is a forwarded version of Ms. McCarthy's original message time stamped-May 31, 2013 3:31 PM, as "fyi".[9]  Although the original email is withheld in full substantive part, the forwarded copy reveals that Ms. McCarthy sent this explanation to a policy aide and an OGC attorney handling a contemporaneous FOIA request for McCarthy's text correspondence on certain dates, also copying public affairs staff and other non-lawyers.

35.   Specifically, Ms. McCarthy sent her email to two principal recipients, one of whom was Joseph Goffman (Associate Assistant Administrator for Air and Radiation, and Senior Counsel for Air regulation[10]).  She copied other non-lawyers, specifically Thomas Reynolds (Office of External Affairs and Environmental Education), John Millett (spokesman), and Arvin Ganesan (at the time, critically, a public affairs specialist, associate administrator for EPA's congressional affairs and intergovernmental relations

---

[9] This release of Avi Garbow forwarding this original to Kevin Minoli is page 311 of of 316 of EPA's August 29, 2014 production.

[10] *See e.g.*, "As senior counsel in the Office of Air and Radiation, Goffman is gearing up the 1970 Clean Air Act to be the vehicle for curbing power plants' greenhouse gas emissions." Jean Chemnick, *Clean Air Act guru returns to shape power plant rule*, Greenwire, Jan. 22, 2014, http://www.eenews.net/greenwire/stories/1059993282.

office).  Ms. McCarthy also copied EPA's Office of General Counsel, and records responsive to the instant request affirm that OGC handled a FOIA request contemporaneous with this apparent description of Ms. McCarthy's texting practices. However, FOIA law is clear that not all correspondence to lawyers, let alone to public affairs and policy people as well, is privileged as attorney-client communication.

36. It appears that only one party whom Ms. McCarthy "cc:d" on the email is employed by EPA in other than an executive capacity, that is, in a legal capacity.  The rest were plainly not parties from whom she was seeking legal, privileged advice.  To the extent Ms. McCarthy may have wanted legal advice by what appears to be an email explaining her texting/text preservation practices in response to a FOIA request for her text messages, she was supposed to get it from EPA's OGC, or otherwise its dedicated legal advisors, not from deputy administrators and policy staff, whether they happen to have a *Juris Doctorate*.  The bar has many requirements for who is and is not a lawyer, and the law many considerations for what constitutes legally privileged correspondence.  EPA has not established that any of these apply in this matter justifying the withholding.

37. As such, on its face what EPA released of this original message reveals that at minimum the original correspondence from Ms. McCarthy is not attorney-client privileged.  In addition, EPA provided no indication or rationale to establish that it is deliberative.

38. EPA's Index of Documents Withheld in Full indicates that there were six responses to this email.  However, EPA's Index withholds the parties to these discussions and so offers no indication whether these discussions also copy the same non-lawyers or have some indication that they are attorney-client privileged.

39. The Index indicates that Gina McCarthy originated two responsive emails on the same date with the Subject: "Text response."   The other one is time-stamped 12:49:36 PM.

40. EPA withholds nine or ten "Text response" emails in full and one in part (if redacted in full substantive part).[11]

41. EPA's Index of Documents Withheld in Full indicates that there were two responsive (to this FOIA) replies to the 12:49 PM McCarthy email, although again given that the Index withholds the parties to these discussions it offers no indication whether these discussions also copy non-lawyers.

42. The 3:31 PM McCarthy email is highly unlikely to qualify for attorney-client privilege, and EPA has failed to meet its burden of showing that the privilege applies to it.[12]   The rest of the "Text response" discussions must be released as well unless EPA establishes their privileged nature; regardless, EPA may not continue to withhold the emails.  At minimum, all "Text response" emails require *in camera* review by this court for EPA to continue to withhold their content.

### B)   EPA Improperly Withholds the Name of Parties to Correspondence

43. By withholding the emails described in paragraphs 33 - 42, *supra*, in full, and identifying only the sender in its index of emails withheld in full, EPA withholds easily segregable factual information.

---

[11] If EPA accidentally included the partially *released* email from Garbow-to-Minoli Subject: FW: Text response, time-stamped on the email itself at 3:33:20 pm, in its Index of Documents Withheld in Full as an email by the same description but time-stamped in the Index at 3:33:00, this number is ten; if that email identified in EPA's Index is *additional to* this described, released Garbow-to-Monoli email (3:33:20), then this number is eleven.  Regardless, plaintiff should not have to engage in such speculation as EPA withholding these emails in full is facially improper.

[12] *See Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973) ("the burden is on the agency to prove . . . that the information sought fits under one of the exemptions to the FOIA")

44.    Plaintiff challenges as improper each EPA withholding of a party's name to responsive correspondence as described, *supra*.

**C)    EPA Improperly Withholds Emails in Full Without Justifying its Failure to Segregate**

45.    Plaintiff challenges EPA withholding those same described emails in full without segregating releasable information or explaining why it could not produce the records in redacted form, despite its manifest ability to redact and produce even the bare minimum of identifying information when it wishes to do so.

**D)    EPA Improperly Withholds Information Claiming Exemption 5 Without Establishing the Correspondence as Inter- or Intra-Agency**

46.    Further, by failing to identify the parties to certain correspondence (emails described in paragraphs 33 - 42, *supra*), EPA inherently fails to establish that that all such correspondence was purely inter- or intra-agency.  This is required to maintain any claimed privilege, and therefore EPA fails to establish that the claimed exemptions apply.

47.    As such, plaintiff challenges all "b5" exemptions claimed for emails described in paragraphs 33 - 42, *supra*.

**II.    EPA Improperly Withholds Discussion by Information Technology Staff as Deliberative, Attorney Work Product and Attorney-Client Privileged Information**

48.    Plaintiff further appealed EPA's withholding of non-deliberative, non-attorney-client or work product information shared between non-attorneys on PDF pages 279-280 of EPA's September 29, 2014 production, and EPA's withholding of the entirety of the related discussion thread as well, on PDF pages 279-285, for the same reasons.

### III.   EPA Improperly Withholds Discussions of Phone Bills as Attorney Work Product, Attorney-Client Privileged and Deliberative Information

49.   Plaintiff also challenges certain other partial withholdings from EPA's productions, specifically claiming Exemption 5 Attorney Client Privilege and Attorney Work Product as well as deliberative process exemptions.  EPA makes these claims about information in correspondence about ways to respond to two of plaintiff's FOIA requests plaintiff made made after learning McCarthy had destroyed all of her text correspondence; one of these sought Gina McCarthy't information training and record-keeping documentation for Ms McCarthy's IT systems training, and the other her phone bills.

50.   Parties to the correspondence include Joe M. Salama of Information and Technology Policy and Training, Office of Environmental Information (OEI), OEI Special Assistant for Technology Operations and Planning's Patricia Hilton, and EPA FOIA officer Larry Gottesman, all seeking an answer to FOIA officer Gottesman's request. for emails discussing billing and invoices for Gina McCarthy's EPA phone.  EPA withholds as both deliberative and attorney-client correspondence including these individuals on PDF pages 279-285 of EPA's September 29, 2014 production.

51.   These correspondence plainly do not seek or communicate legal or confidential advice between a client and an attorney.  Nor do they deal with work done in anticipation of litigation; rather they deal with pre-existing practices of the agency in the process of an initial determination to a FOIA request.  These discussions therefore are not exempt under Exemption 5 because they are neither pre-decisional, that is they plainly are not directly related to actual policy formulation of the kind contemplated by Exemption 5, nor are they otherwise privileged as that exemption requires.

52.   This correspondence plainly does not seek or communicate legal or confidential advice between a client and an attorney.  Nor does it deal with work done in anticipation of litigation; rather it discusses pre-existing practices of the agency in the process of making an initial determination to a FOIA request.  These discussions therefore are not exempt under Exemption 5 because they are neither 'pre-decisional', that is they plainly are not directly related to actual policy formulation of the kind contemplated by Exemption 5, nor are they otherwise privileged as that exemption requires.

53.   Similarly, pages 108-115 of its December 9 final production EPA withholds emails to and from information technology staff and contractors, e.g., Tanika Davis (described on page 33 of 611, December 9, 2014 final production as "EPA's contractor who is responsible for mobile device billing") corresponding with her peers, *inter alia*, Dee Clark and Tom Reilly about "detailed Billing for Gina McCarthy."  These appear to discuss purely factual information regarding EPA's practices with regard to dealing with payments for mobile devices provided by EPA to employees.  They plainly are not deliberative in the sense of Exemption 5 and cannot be withheld as such.

## IV.   EPA Improperly Withholds Information as "Deliberative" Without Establishing that Exemption's Applicability

54.   Finally, plaintiff challenges EPA withholding much of the above-described information as "deliberative" without establishing that it is directly related to actual policy formulation of the kind contemplated by Exemption 5.

## EPA FAILED TO RESPOND TO PLAINTIFF'S ADMINISTRATIVE APPEAL

55.   EPA owed plaintiff a response to this appeal within 20 working days of receipt of the administrative appeal, emailed to the address it has published for receipt of appeals, also specifically provided to plaintiff in EPA's final determination. 5 U.S.C. § 552 (a)(6)(A)(ii)

requires the EPA to "make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal." Considering one federal holiday and weekends, this period lapsed on February 6, 2015.

56. EPA failed to respond to plaintiff's administrative appeal.

57. Plaintiff has a legal right to the information it seeks.

58. Plaintiff has exhausted the administrative process.

59. For these reasons, as explained in detail below, EPA should be required to provide the withheld information contained in records responsive to plaintiff's request.

## FIRST CLAIM FOR RELIEF
### Duty to Release Information Sought by FOIA Request Number HQ-FOI-2014-006434 – Declaratory Judgment

60. Plaintiff re-alleges paragraphs 1-59 as if fully set out herein.

61. FOIA requires that covered agencies provide information responsive to legitimate requests reasonably describing desired records, subject to one of nine enumerated exemptions.

62. Defendant EPA is a covered agency.

63. Plaintiff has sought and been denied production of responsive records and information in responsive records reflecting the conduct of official business.

64. EPA has a duty to establish the validity of any claimed exemptions.

65. EPA has failed to adequately establish the validity of its claimed withholdings as challenged by plaintiff in its administrative appeal involving HQ-FOI-2014-006434.

66. Plaintiff has a statutory right to the information it seeks and EPA has unlawfully failed to provide responsive records.

67. Plaintiff has exhausted its administrative remedies.

68. The requested records are of great and timely public interest.

69. Plaintiff asks this Court to enter a judgment declaring that:

16

a) EPA correspondence as specifically described in Plaintiff's FOIA request EPA-HQ-FOI-2014-006434, and any attachments thereto, are agency records subject to release under FOIA;

b) EPA must release those requested records or segregable portions thereof subject to legitimate exemptions; and

c) EPA's refusal to produce the requested records is unlawful.

## SECOND CLAIM FOR RELIEF
### Duty to Release Information Sought by FOIA Request Number HQ-FOI-2014-006434 — Injunctive Relief

70. Plaintiff re-alleges paragraphs 1-69 as if fully set out herein.

71. Plaintiff is entitled to injunctive relief compelling EPA to produce all information in its possession responsive to plaintiff's FOIA request, subject to legitimate withholdings.

72. This Court should enter an injunction ordering EPA to produce to plaintiff, within 10 business days of the date of the order, the records sought in plaintiff's FOIA request EPA-HQ-FOI-2014-006434, and any attachments thereto, subject to legitimate withholdings.

## THIRD CLAIM FOR RELIEF
### Costs And Fees – Injunctive Relief

73. Plaintiff re-alleges paragraphs 1-72 as if fully set out herein.

74. Pursuant to 5 U.S.C. § 552(a)(4)(E), the Court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

75. This Court should enter an injunction ordering EPA to pay reasonable attorney fees and other litigation costs reasonably incurred in this case.

76.     Plaintiff has a statutory right to the records that it seeks, EPA has not fulfilled its statutory

        obligations to provide the records or establish that the claimed exemptions apply, and there

        is no legal basis for withholding the records.


WHEREFORE, Plaintiff requests the declaratory and injunctive relief herein sought,

and an award for its attorney fees and costs and such other and further relief as the

Court shall deem proper.

        Respectfully submitted this 11th day of February, 2015,


_____/s/_____
Hans Bader, D.C. Bar No. 466545
Sam Kazman, D.C. Bar No. 946376
1899 L Street, NW, 12th Floor
Washington, D.C. 20036
(202) 331-2278

Christopher C. Horner
D.C. Bar No. 440107
1489 Kinross Lane
Keswick, VA 22947
(202) 262-4458
CHornerLaw@aol.com


*Attorneys for Plaintiff*