**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| **COMPETITIVE ENTERPRISE** | ) | |
| **INSTITUTE,** | ) | |
|  | ) | |
| **Plaintiff,** | ) | |
|  | ) | |
| **v.** | ) | **Civil Action No. 15-cv-215 (RMC)** |
|  | ) | |
| **UNITED STATES ENVIRONMENTAL** | ) | |
| **PROTECTION AGENCY,** | ) | |
|  | ) | |
| **Defendant.** | ) | |

_____  )

**OPINION**

On August 24, 2015, the Environmental Protection Agency filed a motion for summary judgment urging the Court to dismiss this Freedom of Information Act complaint filed by the Competitive Enterprise Institute for failure to exhaust administrative remedies.  On March 4, 2016, the Court denied summary judgment and requested further briefing from the parties to determine the timeliness of the suit.  After a thorough review of the parties' supplemental briefs, the Court will find that administrative remedies have been exhausted.  The motion for summary judgment will nevertheless be granted for the reasons below.

**I.   FACTS**

**A.  Background**

The Competitive Enterprise Institute (the Institute) "is a public policy research and education institute in Washington, D.C., dedicated to advancing responsible regulation and in particular economically sustainable environmental policy."  Compl. [Dkt. 1] ¶ 11.  The Institute has previously filed at least seven requests under the Freedom of Information Act, 5 U.S.C. § 522 (FOIA), and four lawsuits seeking records from the Environmental Protection

Agency (EPA) relating to the use of text-messaging by EPA Administrator Gina McCarthy.  At

issue here is the Institute's request on May 13, 2014:

> "copies of all email or text messages sent to or from anyone in EPA
> Headquarters Office of General Counsel that both 1) **is either to or
> from Gina McCarthy or cites or refers to Gina McCarthy, and
> 2) cites, mentions, or refers to the words text messaging or text
> messages (which also includes reference to such terms as, e.g.,
> "texts", "texting", "SMS")**. That is, all OGC emails and/or texts
> that are from, to, cite or refer to Ms. McCarthy, and reference texting
> as described."

*Id.* ¶ 25.  EPA assigned the request identification number HQ-FOI-2014-006434.  *Id.* ¶ 26.

Following four productions that occurred between June 30, 2014 and December 9, 2014, EPA

produced a total of 1702 pages of responsive material, withheld 380 documents in full, and 384

in part under Exemptions 5 and 6 of FOIA, 5 U.S.C. §§ 522(b)(5) & (6).  *See* Statement of

Undisputed Material Facts [Dkt. 8-2] (Facts) ¶ 5-6.  On December 9, 2014, along with the final

set of responsive documents, EPA provided the Institute with a list of records withheld in full

and a final response letter explaining that the Institute could "appeal this response to the National

Freedom of Information Officer, U.S. EPA, FOIA and Privacy Branch, 1200 Pennsylvania

Avenue, N.W. (2822T), Washington, DC 20460 (U.S. Postal Service only), FAX: (202) 566-

2147, E-mail hq.foia@epa.gov."  Facts at ¶ 7; Compl. at ¶ 29.  EPA also produced a *Vaughn*

index[1] listing the records withheld in full or part by category.  *See Vaughn* Index [Dkt. 8-8].  The

Institute challenges the EPA's reliance on Exemption 5 and the use of categories instead of

individual record-by-record entries.

---

[1] The D.C. Circuit's decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), requires
agencies to prepare an itemized index correlating each withheld document, or portion thereof,
with a specific FOIA exemption and the agency's nondisclosure justification.

On Thursday, January 8, 2015, the Institute filed an administrative appeal, sent by electronic mail to hq.foia@epa.gov.  *See* Compl. at ¶ 30.  According to EPA, the agency received the appeal on Monday, January 12, 2015 and on that same day, sent an email to the Institute acknowledging receipt.  *See* Mot. for Summ. J. [Dkt. 8] (MSJ) at 5.  On February 10, 2015, EPA notified the Institute that it required an extension of time to process the administrative appeal. On the following day, February 11, 2015, the Institute filed the current Complaint challenging EPA's handling of, and response to, its request.

### B.  Agency's Search for Responsive Records

Upon receipt of the Institute's May 13, 2014 request, Kevin M. Miller, Assistant General Counsel for Information and head of the Information Law Practice Group within the Office of General Counsel (OGC) of EPA, assigned an attorney on his staff to respond to it.  *See* Miller Decl. [Dkt. 8-3] ¶ 1, 5.  EPA searched "any emails to or from OGC staff that contained a reference to Gina McCarthy and text messaging during the time period July 1, 2012 to the date the request was processed (which was June 9, 2014)."  *Id.* ¶ 7.  On the staff attorney's recommendation, EPA specifically searched "the files of any OGC attorney who worked on matters relating to this subject area during the time frame."  *Id.* ¶ 8.  Seven attorneys were identified and their files searched using the following terms:  "(McCarthy AND text) OR (McCarthy AND SMS) OR (Gina AND text) OR (Gina AND SMS)."  *Id.* ¶ 9.  The term "text" located documents containing variations of the word, such as "texting" and "texts."

The staff attorney then reviewed the search results for responsive documents, excluding documents using the term "text" in a manner unrelated to text messaging.  Documents withheld in part were redacted line by line.  *Id.* ¶ 12, 15.  Mr. Miller "reviewed all proposed redactions and either made changes [himself] to the documents, or provided changes to the

attorney." *Id*. ¶ 16.  EPA did not locate any responsive text messages.  Only three of the seven

attorneys whose files were searched had agency-issued cellphones and none of them had

responsive text messages.  *Id*. ¶ 11.

### C.  First Motion for Summary Judgment

On August 24, 2015, EPA filed a Motion for Summary Judgment arguing, *inter*

*alia*, that the Institute failed to exhaust its administrative remedies by filing the present

Complaint before EPA had an opportunity to resolve the appeal.  The Institute argued that EPA

failed to respond to its appeal within the twenty-day statutory period and that, therefore,

exhaustion was complete.

On March 4, 2016, this Court issued an Opinion explaining that "[w]hat matters is

the date that *the Agency* received the appeal" for purposes of determining exhaustion.

*Competitive Enter. Inst. v. EPA*, 167 F. Supp. 3d 74, 79 (D.D.C. 2016) (RMC).  The Court

requested "a more thorough explanation of the information technology involved" because EPA

did "not explain the communication technology at work here, whereby a message emailed to a

public address on a Thursday was somehow not delivered until the following Monday." *Id*. at

75, 80.  Because there were possible explanations for this time delay, such as "outside

contractors, technical limitations, etc." the Court denied EPA's motion for summary judgment

pending further information.  *Id*. at 80.

In response to the Court's Order, EPA filed a Supplemental Memorandum and

Renewed Motion for Summary Judgment attaching the declaration of Larry F. Gottesman,

Acting Chief of the FOIA and Privacy Branch of Environmental Information.  *See* Supp. MSJ

[Dkt. 15]; Gottesman Decl. [Dkt. 15-1] ¶ 1.  Mr. Gottesman explains that the email address

used, hq.foia@epa.gov, is administered by EPA Headquarters Freedom of Information Staff

(Staff) as required by EPA regulations, 40 C.F.R. § 2.104(j).  *See* Gottesman Decl. ¶ 3.  The

Staff includes five individuals, three full-time employees and two who work four-day weeks.

*See id.*  The Staff "review incoming U.S. mail and monitor the group email box to process FOIA

requests and appeals submitted to the EPA."  *Id.*  The Staff uses FOIAonline, a web-based shared

service, to manage all administrative appeals.  The Staff's email address is not connected to

FOIAonline.  Once a Staff member receives an emailed appeal, he or she begins processing the

appeal by manually entering relevant information into FOIAonline, including the date on which

the Staff member received the emailed appeal.  *See id.* ¶ 4.  Once an appeal has been entered into

FOIAonline, the system automatically assigns the case to the OGC for processing and "notifies

the person to whom the appeal is assigned of the date on which the appeal was entered into the

system and the date the appeal determination is due."  *Id.* ¶ 5.

       On Thursday, January 8, 2015, the Institute's appeal was emailed to the Staff

email address at 8:37 p.m., after close of business, and after the scheduled work hours of the

Staff member on duty to monitor the email inbox.  *See id.* ¶ 7.  Ordinarily, the Staff member on

duty the following day would have entered the appeal, however, that person was on leave due to

a serious medical condition.  As a result, no Staff member monitored the inbox on Friday,

January 9, 2015.  The Staff member on duty on Monday entered the Institute's appeal into

FOIAonline at 8:58 a.m. on that day, Monday, January 12, 2015.  FOIAonline immediately

notified the Institute that the appeal had been received, indicating the date of receipt as January

12, 2015 and the date on which the EPA's determination was due as February 10, 2015.  *See id.*

¶ 9.

       Based on the above facts, EPA argues that it was only in "receipt" of the

Institute's appeal on Monday, January 12, 2015, when the Staff member opened the email and

entered the appeal into FOIAonline. *See* Supp. MSJ at 5. Thus, EPA argues that it timely

responded to the appeal on February 10, 2015 when it asked for an extension of time. *See id.*

The Institute argues that the appropriate inquiry in determining the timeliness of EPA's response

is when did the *Agency*, and not a particular employee, receive the appeal. *See* Supp. Opp'n

[Dkt. 16] at 2. The appeal was received by the Agency on January 8, 2015 and, therefore, the

Institute asserts that a response was due by February 6, 2015.

## II.  LEGAL STANDARDS

### A.  Summary Judgment

FOIA cases are typically and appropriately decided on motions for summary

judgment. *Brayton v. U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011); *Moore v.*

*Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009). Federal Rule of Civil Procedure 56 provides that

summary judgment must be granted when "the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is

properly granted against a party who, after adequate time for discovery, "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir.

2016) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In ruling on a motion for

summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor

and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving

party, however, must establish more than "the mere existence of a scintilla of evidence" in

support of its position. *Id.* at 252.

### B. FOIA

FOIA requires federal agencies to release government records to the public upon request, subject to nine listed exceptions. *See* 5 U.S.C. § 552(b); *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). A defending agency in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information. *See Sanders v. Obama*, 729 F. Supp. 2d 148, 154 (D.D.C. 2010), *aff'd sub nom. Sanders v. Dep't of Justice*, Civ. No. 10–5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011). The adequacy of a search is measured by a standard of reasonableness and depends on the individual circumstances of each case. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The question is not whether other responsive records may exist, but whether the search itself was adequate. *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). A court reviews an agency's response to a FOIA request *de novo*.  5 U.S.C. § 552(a)(4)(B).

In this case, the Institute is challenging EPA's reliance on Exemption 5, which exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. 552(b)(5).  This has been interpreted to protect documents ordinarily privileged in the civil discovery context and encompasses material protected under the attorney-client, attorney work-product, and deliberative process privileges.  *See Judicial Watch, Inc v. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 132 (D.D.C. 2013).

### C. *Vaughn* Index

Although agencies frequently rely on *Vaughn* indices, "'[t]he materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to

evaluate the claim of privilege.'" *ACLU v. CIA*, 710 F.3d 422, 433 (D.C. Cir. 2013) (quoting *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994)).

This Court has held that "[t]he 'grouping' of documents in the *Vaughn* Index may be permissible . . . when the withholdings comprise multiple, duplicative records" and "when the government's supporting affidavits are 'sufficiently detailed to allow the district court fairly to evaluate' the application of a claimed exemption to distinct categories of documents." *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 955 F. Supp. 2d 4, 14 (D.D.C. 2013) (quoting *Gallant v. NLRB*, 26 F.3d at 173).

## III. ANALYSIS

### A. The Institute Properly Exhausted Administrative Remedies

An Agency must "make a determination with respect to any appeal within twenty days . . . after the receipt of such appeal." 5 U.S.C. 552(a)(6)(A)(ii). Exhaustion of an administrative appeal is a prerequisite to seeking judicial relief. *See Dettmann v. Dep't of Justice*, 802 F.2d 1472, 1476 (D.C. Cir. 1986) ("It goes without saying that exhaustion of remedies is required in FOIA cases."). However, only "[o]nce the head of the agency has made a determination on appeal or the twenty-day statutory deadline for the appeal decision has passed" may an individual seeking documents bring suit in federal district court. *Oglesby v. Dep't of Army*, 920 F.2d 57, 71 (D.C. Cir. 1990), *overruled in part on other grounds*, 79 F.3d 1172 (D.C. Cir. 1996).

While EPA acknowledges that the Institute's email arrived in the Staff group email inbox on the evening of Thursday, January 8, 2015, it argues that "receipt" should be interpreted to mean the date on which a Staff member opened the email. *See* Supp. MSJ at 5. In its March 4, 2016 Opinion, this Court distinguished the law governing FOIA *requests* versus

FOIA *appeals*, explaining that in the context of an appeal the relevant question is "when the Institute's appeal was received *by EPA*." FOIA requests, on the other hand, may be appealed within twenty days of receipt by "the appropriate component of the agency." *Competitive Enter. Inst. v. EPA*, 167 F. Supp. 3d at 78-79. EPA clearly received the Institute's appeal on January 8 and thus failed to respond on a timely basis. The Institute properly exhausted its administrative remedies before instituting this suit in federal court.

### B.  EPA's *Vaughn* Index is Adequate

EPA provided a 50-page *Vaughn* Index detailing withheld and redacted records and accompanied by the declaration of Kevin M. Miller, the Assistant General Counsel for Information Law and head of the Information Law Practice Group of the OGC of EPA. *See Vaughn* Index [Dkt. 8-8]; Miller Decl. at ¶ 1. Most of the listed records qualified for multiple privileges under Exemption 5. Of the 380 records withheld in full, 364 were withheld under the deliberative process privilege, 376 under the attorney-client privilege, and 368 under the attorney work product privilege. Of the 384 records withheld in part, 375 were withheld under the deliberative process privilege, 363 under the attorney-client privilege, and 209 under the attorney work product privilege. Facts ¶ 8-9.

The *Vaughn* Index divides these records into twenty-eight categories, labelled "A" to "Z" and "AA" to "BB." Each category lists the records being withheld, whether each record was withheld in full or in part, provides a description of each record, explains the reasons EPA decided the record qualifies for a relevant privilege, and addresses the segregability of withheld information. Each category consists of a series of email correspondence on a particular topic. The nature of the correspondence is explained for each category, the offices involved, and, where appropriate, names of individuals included on the correspondence are identified.

When assessing the sufficiency of a *Vaughn* index, courts "focus on the functions of the *Vaughn* index" rather than its form. *Judicial Watch, Inc. v. Food & Drug Admin*, 449 F.3d 141, 146 (D.C. Cir. 2006).   When an agency has disclosed and withheld or redacted large numbers of records, "categorization and repetition provide efficient vehicles by which a court can review withholdings that implicate the same exemption for similar reasons." *Id*. at 147. Under such circumstances, individual record-by-record entries "may actually impede court review and undermine the functions served by a *Vaughn* index." *Id*.

EPA's *Vaughn* Index is not overly generalized, each document is tied to a specific category and appropriate exemption, and segregability is addressed. *See e.g. Center for Auto Safety v. Dep't of Treasury*, 133 F. Supp. 3d 109, 122 (D.D.C. 2015) (*Vaughn* index deficient for failure to identify clearly categories to which each record belonged and address segregability). The *Vaughn* Index here provides sufficient information to evaluate EPA's claim of privilege.

## C.  Adequacy of the Search

To rebut a challenge to the adequacy of a search, an agency must show that "the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C.Cir.1991) (citing *Meeropol v. Meese*, 790 F.2d 942, 950–51 (D.C. Cir. 1986)).  Agencies are not required to search every record system, but agencies must conduct a good faith, reasonable search of those systems of records likely to possess the requested records. *Oglesby v. Dep't of Army*, 920 F.2d at 68.  An agency may prove the reasonableness of its search by a declaration by responsible agency officials, so long as the declaration is reasonably detailed and not controverted by contrary evidence or evidence of bad faith. *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Once an agency has provided such affidavits, the burden

shifts to the plaintiff to demonstrate the lack of a good faith search. *See Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir.1993).

The Institute has failed to articulate a specific challenge to EPA's search for responsive records. Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by "purely speculative claims about the existence and discoverability of other documents." *Ground Saucer Watch, Inc. v. CIA,* 692 F.2d 770, 771 (D.C. Cir. 1981). The Miller Declaration describes a search reasonably calculated to uncover responsive documents and the Institute provides nothing to challenge the presumption of good faith afforded the declaration.

**D. Exemption 5**

The Institute complains that EPA improperly redacted information that was not exempt. EPA contends that the deliberative process, attorney-client, and/or work-product privileges of FOIA Exemption 5 apply. For the reasons below, the Court holds that EPA properly withheld documents under Exemption 5.

Exemption 5 provides that FOIA does not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 encompasses materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive deliberative process privilege. *See Formaldehyde Inst. v. Dep't Health & Human Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975) (Exemption 5 includes all documents "normally privileged in the civil discovery context.").

The attorney-client privilege protects "'confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional

advice.'" *Judicial Watch, Inc. v. Dep't of Treasury*, 802 F. Supp. 2d 185, 200 (D.D.C. 2011)

(quoting *Mead Data Central, Inc. v. Dep't of Air Force*, 566 F.2d 252 (D.C. Cir. 1977)).  The

purpose of the privilege is to ensure that a client's confidences are protected, encouraging clients

to be honest with their attorneys.  *See Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 736 F.

Supp. 2d 202, 209 (D.D.C. 2010).  In the context of FOIA, "the agency is the 'client' and the

agency's lawyers are the 'attorneys' for the purposes of attorney-client privilege."  *Judicial*

*Watch v. Dep't of Treasury*, 802 F. Supp. 2d at 200.

An attorney's work product prepared or obtained in anticipation of litigation is

protected from disclosure under the work product doctrine.  Fed. R. Civ. P. 26(b)(3); *EEOC v.*

*Lutheran Social Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999); *In re Grand Jury Proceedings*, 5 F.

Supp. 2d 21 (D.D.C. 1998).  The party asserting the protection bears the burden of establishing

that the work product doctrine applies.  *United States v. Constr. Prods. Research*, 73 F.3d 464,

473 (2d Cir. 1996).  So long as a document was prepared because of the prospect of litigation,

even the factual portions of the document are protected under the work product doctrine.  *Equal*

*Rights Ctr. v. Post Properties, Inc.*, 247 F.R.D. 208, 211 (D.D.C. 2008).

The deliberative process privilege exempts from disclosure documents "reflecting

advisory opinions, recommendations and deliberations comprising part of a process by which

governmental decisions and policies are formulated."  *NLRB v. Sears, Roebuck & Co.*, 421 U.S.

at 150.  Further, Exemption 5 "covers recommendations, draft documents, proposals,

suggestions, and other subjective documents which reflect the personal opinions of the writer

rather than the policy of the agency."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d

854, 866 (D.C. Cir. 1980).  Such documents are protected in order to promote "the quality of

agency decisions by protecting open and frank discussion among those who make them within

the Government." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001); *accord Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997) (noting that the quality of decision-making would be seriously undermined if agencies were forced to operate in a "fish bowl" since open and frank discussion regarding legal or policy matters would be impossible).

**1.   Communications with Contractor Are Protected Under Exemption 5**

The Institute challenges the application of the attorney-client privilege to emails including a contractor, Tanika Davis, arguing that such records are outside the scope of the privilege.  It further asserts that categories of records that "reflect[] communications" to agency lawyers "concerning legal advice" or "seeking legal advice" are overly broad and include records that merely relate to a privileged communication and are not themselves privileged.  Opp'n at 28-30.

A communication is only protected by the attorney-client privilege if its primary purpose is either "'(i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding.'"  *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 308 (D.D.C. 2013) (quoting *In re Grand Jury*, 475 F.3d 1299, 1304 (D.C. Cir. 2007)).  Exemption 5 applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  For FOIA purposes, "intra-agency" documents can include communications to or from non-governmental parties, including contractors.  *See Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 892 F. Supp. 2d 28, 45 (D.D.C. 2012).  The exemption is applied only where "'the consultant does not represent an interest of its own, or the interest of any other client, when it advises the agency that hires it.'"  *Id.* (quoting *Klamath*, 532 U.S. at 11).  In order to be excluded from the consultant exemption, a contractors' position must be adverse to that of the government.  *Id.* at 46.

13

Ms. Davis was hired as an EPA contractor tasked with "locating and providing the mobile device data and information used to respond to the questions posed by the staff attorneys" for the purpose of obtaining legal advice for ongoing litigation.  Supp. Miller Decl. [Dkt. 10-2] ¶¶ 3-4.  In all communications, Ms. Davis "was acting within the scope of the contract and for the purpose of aiding the EPA in its functions in responding to the client offices and attorneys' questions."  *Id* ¶ 4.  The Institute's challenge to the application of the attorney-client privilege to communications that include Ms. Davis must fail.  As described, her communications were intra-agency and for the purpose of litigation and are therefore exempt from disclosure.

The Court can find no basis for the Institute's assertion that the attorney-client privilege was improperly applied to communications that it claims only relate to a privileged communication.  The challenged categories of documents are communications between attorneys and staff members for the purpose of developing legal strategy and therefore more than simply related to a privileged communication.  The Supreme Court has made clear that the attorney-client privilege extends to communications with employees in the lower echelons of an agency who do not have decision-making power.  *See Upjohn Co. v. United States*, 449 U.S. 383, 392-96 (1981).  To the extent that the Institute challenges communications between attorneys and such staff members, it errs; those communications fall within the attorney-client privilege.

### 2.   "The Salama Emails" Are Protected Under Exemption 5

Categories F and G of the *Vaughn* Index include correspondence between attorneys at both OGC and DOJ and program staff concerning pending FOIA litigation.  The Institute challenges redactions to a specific set of emails between two non-lawyers, Patricia Hilton and Joseph Salama.  The series of emails was initiated by an OGC attorney requesting information to be used in responding to a complaint.  In responding to the attorney, a FOIA

officer included Ms. Hilton on the correspondence and asked her to provide further information. Ms. Hilton then forwarded the email to Mr. Salama, without including an attorney on the email, seeking his assistance in answering the question posed by the FOIA Officer.  *See Vaughn* Index at 13-14.  The Institute challenges the application of the attorney-client privilege to those emails between Ms. Hilton and Mr. Salama on which no attorney is copied.  It also challenges the general application of the attorney-client privilege to correspondence concerning EPA's "search process in response to a FOIA request."  Opp'n at 36.

In *Upjohn*, the Supreme Court held that the attorney-client privilege applies to corporations because corporations need to "constantly go to lawyers to find out how to obey the law."  *Upjohn*, 449 U.S. at 392.  The Court further stated that the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."  *Id*. at 390. *Upjohn* held that the questionnaires, memoranda and notes of interviews for an internal investigation conducted by corporate counsel were protected by the attorney-client privilege.  *Id*. at 386.  The D.C. Circuit has extended *Upjohn* to include notes of interviews of non-attorneys conducted by non-attorneys because "the investigation . . . was conducted at the discretion of the attorneys."  *In re Kellogg Brown & Root, Inc*, 756 F.3d 754, 758 (D.C. Cir. 2014).  Similarly, the challenged emails between Ms. Hilton and Mr. Salama were exchanged at the request of attorneys and to provide information to attorneys for the purpose of obtaining legal advice. Under these circumstances, the fact that these particular emails are between two non-attorneys does not negate protection under the attorney-client privilege.

The Institute also challenges correspondence regarding EPA's search process, claiming that such records were generated in the ordinary course of business and were not

prepared for the sole purpose of litigation.  *See* Opp'n at 38.  In determining whether

correspondence is prepared for the "primary purpose" of seeking or providing legal advice, and

therefore protected by the attorney-client privilege, the D.C. Circuit has rejected a strict "but for"

test.  *Id*. at 759-60.  Instead, courts in this Circuit apply the "primary purpose test" which asks:

"Was obtaining or providing legal advice *a* primary purpose of the communication, meaning one

of the significant purposes of the communication?"  *Id*. at 760 (emphasis in original).  It is clear

that the correspondence in Categories F and G were prepared for the purpose of obtaining legal

advice from counsel on how to respond to FOIA requests and in anticipation of litigation.  It is

irrelevant that this may not have been the sole purpose of these communications.  The records

were appropriately withheld or redacted under Exemption 5.

### 3.   Records Clarifying FOIA Requests Are Protected Under Exemption 5

The Institute also challenges the redaction of records in Category H of the *Vaughn*

Index.  These records are a series of emails containing a "lengthy discussion among multiple

staff in the Office of Environmental Information [(OEI)] concerning a request from the Office of

Air and Radiation (OAR) to locate detailed text messaging transmission information in response"

to one of the Institute's earlier FOIA requests. *Vaughn* Index at 15.  The request sought "invoices

or bills" associated with Ms. McCarthy's cellphone over a period of three years.  The terms

"billing" and "invoice" created confusion among staff tasked with responding to the request.

These emails are a discussion among staff members "seeking to clarify the request for

information to determine whether it was actually cost information or text message usage

information that was being requested."  *Id*.  There are a total of twenty-eight emails included in

this correspondence, thirteen emails were released in full, and fifteen emails were redacted under

the deliberative process privilege.

The Institute argues that the records are not protected because the discussion involves merely the application of legal standards and not the development of agency policy.  It also argues that Exemption 5 should not apply because some of the correspondence includes Ms. Davis, a contractor.

To qualify for protection under Exemption 5 as deliberative process material, a document must be "predecisional," *i.e.*, "generated before the adoption of an agency policy," and "deliberative," *i.e.*, reflecting "the give-and-take of the consultative process." *Public Citizen, Inc. v. OMB*, 598 F.3d 865, 874 (D.C. Cir. 2009) (citations and internal quotation marks omitted). The deliberative process privilege generally does not cover the purely factual portions of records, except in cases where the factual material "is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997); *Public Citizen, Inc.*, 598 F.3d at 876 ("[A]gencies must disclose those portions of predecisional and deliberative documents that contain factual information that does not inevitably reveal the government's deliberations.") (internal quotations omitted).

EPA explains that these documents should be exempt under the deliberative process privilege because they involve discussion on "opinions relating to options for responding to plaintiff's FOIA request," that they are predecisional because they pre-dated a final response from EPA, and deliberative because they reflect "analysis and opinions on options that were still in development" by EPA. *Vaughn* Index at 16.  In addition, "[t]o the extent there are facts in these records, the selection of those facts [is] an integral part of the process of advising EPA decisionmakers responding to the FOIA request and related litigation." *Id.*  The consultative process described by EPA reflects "the give-and-take" the deliberative process privilege seeks to

17

protect and involves more than the mere application of legal standards as the Institute suggests. *See e.g.*, *National Security Counselors v. CIA*, No. 11-443, 2016 WL 4621060, at *28 (D.D.C. Sept. 6, 2016) (memoranda requesting coordination on response to FOIA request and with specific instructions on release of information protected under deliberative process privilege).

The Institute's reliance on *People for the American Way Foundation v. Dep't of Education*, 516 F. Supp. 2d 28 (D.D.C. 2007), for the proposition that communications with contractors are not protected is misplaced. *See* Opp'n at 40. In that case, the contractors fell outside of a FOIA exemption because they had interests that were independent from the agency and they were not hired to provide the agency with advice. *People for the American Way Foundation*, 516 F. Supp. 2d at 40. For the reasons articulated above, Ms. Davis did not have an independent interest and was hired for the explicit purpose of providing advice. Her role as a contractor does not preclude the application of the deliberative process privilege to the records in Category H.

### 4.   Public Relations Documents Are Protected Under Exemption 5

The Institute challenges documents in Categories B and C of the *Vaughn* Index involving correspondence between attorneys and staff members concerning drafting a public statement in response to FOIA litigation and a discussion of the "legal risks associated with different options for the draft statement." *Vaughn* Index at 3.

Emails "generated as part of a continuous process of agency decision-making regarding how to respond to" a press inquiry are protected by the deliberative process privilege. *Judicial Watch v. Dep't of the Treasury*, 796 F. Supp. 2d 13, 31 (D.D.C. 2011). The documents in Categories B and C were clearly generated as part of a media strategy in response to FOIA litigation. Furthermore, the correspondence is predecisional in that it pre-dated the release of a

public statement and is deliberative because it involved personal opinions and thoughts of staff members working to identify the options.  In addition, the correspondence is protected by attorney-client privilege because a primary purposes of the emails was to obtain legal advice concerning the legal risks of the various options for a public statement.  The public relations documents were therefore appropriately withheld under Exemption 5.

### E.  Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the nonexempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans–Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999). The court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)). To demonstrate that all reasonably segregable material has been released, an agency must provide a detailed justification rather than conclusory statements. *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

The Court has reviewed EPA's *Vaughn* Index and Miller Declaration and finds that they adequately explain that no portions of the records were segregable. *See Vaughn* Index; Miller Decl. ¶ 15.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment, Dkt. 8, will be granted.  A memorializing Order accompanies this Opinion.


Date: February 8, 2017

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge
